**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation<br><br>Plaintiffs,<br><br>v.<br><br>Wilsonart International Holdings LLC and Wilsonart LLC,<br><br>Defendants. | Civil Action No. 1:26-cv-02818 |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Liberty Mutual Fire Insurance Company ("LM Fire") and Liberty Insurance Corporation ("LIC") (collectively, "Liberty"), by and through their undersigned attorneys, hereby submit this Complaint for Declaratory Judgment against Wilsonart International Holdings LLC ("Wilsonart Holdings") and Wilsonart LLC (collectively, "Wilsonart"), and allege as follows:

**NATURE OF THE ACTION**

**1.** Wilsonart is a manufacturer, distributor, and marketer of natural and artificial stone surfaces, which contain silica and other contaminants.

**2.** Wilsonart has been sued, along with a number of other defendants, in more than 130 lawsuits brought by individuals alleging that they suffer from silicosis and other related bodily injuries as a result of having inhaled or ingested silica, either alone or in combination with other substances, generated during the fabrication of defendants' stone products (collectively, the "Silica Lawsuits").

**3.** Wilsonart tendered one of the Silica Lawsuits, an action filed by Evelin Liseth Gonzalez Rodriguez and other claimants (the "Rodriguez Action") to Liberty, seeking defense and indemnity under four (4) primary policies issued by LM Fire (the "LM Fire Primary Policies") and four (4) umbrella policies issued by LIC (the "LIC Umbrella Policies") (collectively, the "Liberty Policies"), covering the period from October 31, 2021 to October 31, 2025.

**4.** Liberty denied coverage for the Rodriguez Action under the Liberty Policies. Among the policy provisions on which Liberty relied in its denial was a silica exclusion contained in each of the Liberty Policies (the "Silica Exclusions"). Although the precise language of the Silica Exclusions differs depending on the subject policy, each iteration broadly excludes injuries or damages caused or allegedly caused by silica, either alone or in combination with other substances. In addition, the Silica Exclusions in the LM Fire Primary Policies exclude coverage for any liability, damages, loss, injury, demand, claim or "suit" any part of which is caused by, or allegedly caused by, silica, either alone or in combination with other substances or factors. The Rodriguez Action falls squarely within the language of the Silica Exclusions, as the Rodriguez Action is a "suit" alleging injuries arising, in whole or in part, out of, or caused by exposure to silica, either alone or in combination with other substances.

**5.** The LM Fire Primary Policies and the LIC Umbrella Policies effective October 31, 2021 through October 31, 2025 contain pollution exclusions (the "Pollution Exclusions"). The LM Fire Primary Policies exclude "'bodily injury' … which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The LIC Umbrella Policies exclude "[a]ny liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, anywhere at any time, whether included in a product or otherwise." In the Liberty

Policies, "Pollutants" is defined as: "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." The plaintiff in the Rodriguez Action alleges that he suffered "bodily injury" due to the discharge, dispersal, release and/or escape of silica and other contaminants from Wilsonart's stone products, which plaintiff inhaled or ingested. The Pollution Exclusions therefore also bar coverage for the Rodriguez Action. *See, e.g., RLI Ins. Co. v. Gonzalez,* 411 Fed. Appx. 696, 698 (5th Cir. 2011) (per curiam) ("The Pollution Exclusion on its face excludes injuries arising from exposure to '*all* . . . irritants and contaminants' . . . Silica dust is unambiguously a 'pollutant' under the language of the Pollution Exclusion"); *Mt. Hawley Ins. Co. v. Wright Materials, Inc.*, 2005 U.S. Dist. LEXIS 25315, *12 (N.D. Tex. 2005) ("The cement dust and any toxins contained therein are irritants or contaminants under the terms of the pollution exclusion. Therefore, Mt. Hawley has no duty to defend any claims arising out of the discharge or release of such materials").

**6.** An actual and justiciable controversy exists between Liberty and Wilsonart concerning coverage under the Liberty Policies for the claims asserted in the Rodriguez Action. The Rodriguez Action is currently pending and alleges claims against Wilsonart that potentially implicate coverage under the Liberty Policies. Because the duty to defend analysis under Texas law is determined by comparing the allegations in the operative pleading with the terms of the insurance policy, the controversy is ripe for judicial determination. *See Ace Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 840 (5th Cir. 2012) ("Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed").

**7.** As described further below, Liberty owes no coverage obligations with respect to the Rodriguez Action. In light of this pending controversy, Liberty seeks a declaration that it is not obligated to defend or indemnify Wilsonart in connection with the Rodriguez Action.

## PARTIES

**8.** Plaintiff Liberty Mutual Fire Insurance Company is organized under the laws of Wisconsin with its principal place of business in Boston, Massachusetts.

**9.** Plaintiff Liberty Insurance Corporation is organized under the laws of Illinois with its principal place of business in Boston, Massachusetts.

**10.** On information and belief, Defendant Wilsonart Holdings is organized under the laws of Delaware with its principal place of business in Austin, Texas.

**11.** On information and belief, Defendant Wilsonart LLC is a subsidiary of Wilsonart Holdings, and is organized under the laws of Delaware with its principal place of business in Austin, Texas.

## JURISDICTION & VENUE

**12.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the dispute is between citizens of different states: Plaintiff LM Fire is a citizen of Wisconsin and Massachusetts; Plaintiff LIC is a citizen of Illinois and Massachusetts; Defendant Wilsonart is a citizen of Texas and Delaware; and Defendant Wilsonart Holdings is a citizen of Texas and Delaware.

**13.** This Court has personal jurisdiction over Wilsonart because its principal place of business is in Austin, Texas.

**14.** Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Wilsonart resides in this district.

**15.** This Court has authority to grant the relief requested herein with respect to the controversy between Liberty and Wilsonart, in accordance with the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

## FACTUAL ALLEGATIONS

### I. The Liberty Policies

#### *A. The LM Fire Primary Policies*

**16.** LM Fire issued the following commercial general liability policies to Wilsonart[1], true and correct copies of which are attached hereto as Exhibits A–D (the "LM Fire Primary Policies"):

a. TB2-631-510797-021, with a policy period of October 31, 2021 to October 31, 2022. (Exhibit A)

b. TB2-631-510797-022, with a policy period of October 31, 2022 to October 31, 2023. (Exhibit B)

c. TB2-631-510797-023, with a policy period of October 31, 2023 to October 31, 2024. (Exhibit C)

d. TB2-631-510797-024, with a policy period of October 31, 2024 to October 31, 2025. (Exhibit D)

**17.** The LM Fire Primary Policies contain a Commercial General Liability Coverage Form CG 00 01 04 13, which states, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

[1] Both Wilsonart International Holdings LLC and Wilsonart LLC are Named Insureds under the LM Fire Primary Policies.

**1.** Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result.

…

**b.** This insurance applies to “bodily injury” and “property damage” only if:

**(1)** The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory”;

**(2)** The “bodily injury” or “property damage” occurs during the policy period;

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II-Who Is An Insured and no “employee” authorized by you to give or receive notice of an “occurrence” or claim knew that the “bodily injury” or “property damage” had occurred, in whole or in part. If such a listed insured or authorized “employee” knew, prior to the policy period, that the “bodily injury” or “property damage” occurred, then any continuation, change or resumption of such “bodily injury” or “property damage” during or after the policy period will be deemed to have been known prior to the policy period.

…

**SECTION V – DEFINITIONS**

**3.** “Bodily injury” means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**13.** “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

**15.** “Pollutants” mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

**17.** “Property damage” means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**18.** Each of the LM Fire Primary Policies redefines "occurrence" via Endorsement LC 29 06 08 08, which states, in relevant part, as follows:

**Personal and Advertising Injury – Occurrence Redefined**

B. The definition of "occurrence" in the Definitions section is replaced by the following: "Occurrence" means:

a. With respect to "bodily injury" or "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions; or

b. With respect to "personal and advertising injury," an offense or series of related offenses.

**19.** The LM Fire Primary Policies contain a Silica Exclusion Endorsement, via Endorsement LC 21 02 06 05, which states, in relevant part, as follows:

**SILICA EXCLUSION ENDORSEMENT**

This insurance does not apply to any liability, damages, loss, injury, demand, claim or "suit" any part of which is caused by, or allegedly caused by, silica in any form or any substance containing silica, either alone or in combination with other substances or factors, whether included in a product or otherwise.

**20.** The LM Fire Primary Policies covering the period October 31, 2023 through October 31, 2025 contain a Total Pollution Exclusion With A Hostile Fire Exception, via Endorsement CG 21 55 09 99, which states, in relevant part, as follows:

**TOTAL POLLUTION EXCLUSION**
**WITH A HOSTILE FIRE EXCEPTION**[2]

Exclusion **f.** under Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"…

…

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**21.** The LM Fire Primary Policies contain a Non-Cumulation of Liability (Same Occurrence) provision, via Endorsement LC 25 13 08 08, which states, in relevant part, as follows:

---

[2] The LM Fire Primary Policy covering the period October 31, 2021 through October 31, 2022 contains Endorsement LG 30 93 08 99 (Texas – Total Pollution Exclusion). The LM Fire Primary Policy covering the period October 31, 2022 through October 31, 2023 contains both Endorsement LG 30 93 08 99 (Texas – Total Pollution Exclusion) and Endorsement CG 21 49 09 99 (Total Pollution Exclusion Endorsement). Each bars coverage for "bodily injury" that would not have occurred in whole or part but for the discharge, dispersal, seepage, migration, release or escape of pollutants.

**Non-Cumulation of Liability**
**(Same Occurrence)**

…

2. The following is added to paragraph 5. of the Limits of Insurance Section:

If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence".

3. The final paragraph of the Limits of Insurance Section is replaced with the following:

The aggregate Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the aggregated Limits of Insurance. However, the Each Occurrence Limit is the most we will pay for damages and Medical Expenses because of all "bodily injury" and "property damage" arising out of any one "occurrence" . . . regardless of the length of the policy period.

*B. The LIC Umbrella Policies*

**22.** LIC issued the following umbrella excess liability policies to Wilsonart[3], true and correct copies of which are attached hereto as Exhibits E–H (the "LIC Umbrella Policies"):

a. TH7-631-510797-061, with a policy period of October 31, 2021 to October 31, 2022. (Exhibit E)

b. TH7-631-510797-062, with a policy period of October 31, 2022 to October 31, 2023. (Exhibit F)

c. TH7-631-510797-063, with a policy period of October 31, 2023 to October 31, 2024. (Exhibit G)

[3] Both Wilsonart International Holdings LLC and Wilsonart LLC are Named Insureds under the LIC Umbrella Policies.

d. TH7-631-510797-064, with a policy period of October 31, 2024 to October 31, 2025. (Exhibit H)

**23.** The Insuring Agreement of the LIC Umbrella Policies provides, in relevant part, as follows:

**COMMERCIAL LIABILITY – UMBRELLA COVERAGE FORM**
**INSURING AGREEMENTS**

**SECTION I – COVERAGES**

1. We will pay on behalf of the insured those sums in excess of the **retained limit** that the insured becomes legally obligated to pay as damages because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies. In addition, we will pay those sums in excess of the **retained limit** that the insured becomes legally obligated to pay as damages because of a negligent act, error or omission committed in the administration of the Named Insured's employee benefit program, to which this insurance applies.

   The amount we will pay for damages is limited as described in **SECTION III – LIMITS OF INSURANCE.**

2. With respect to **bodily injury**, **property damage** or **personal and advertising injury**, this insurance applies only if:

   a. The bodily injury or property damage occurs during the **policy period**…

   b. The **bodily injury, property damage** or **personal** and **advertising injury** is caused by an occurrence that takes place anywhere; and

   c. Prior to the policy period, no insured listed under Paragraph **3.** of **SECTION II – WHO IS AN INSURED** or any employee who has been authorized by you to give or receive notice of an occurrence or claim, knew that the **bodily injury** or **property damage** had occurred, in whole or in part.

3. **Bodily injury** or **property damage** will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **3.** of **SECTION II – WHO IS AN INSURED**, or any employee authorized by you to give or receive notice of an occurrence or claim:

   a. Reports all, or any part of, such **bodily injury** or **property damage** to us or any other insurer;

   b. Receives a written or oral demand or claim for damages because of such **bodily injury** or property damage; or

c. Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

If such a listed insured or authorized **employee** knew, prior to the **policy period**, that the **bodily injury**, or **property damage** had occurred, then any continuation, change or resumption of such **bodily injury**, or **property damage** during or after the **policy period** will be deemed to have been known prior to the policy period.

4. **Bodily injury** or **property damage** which occurs during the **policy p**eriod and which was not, prior to the **policy period**, known to have occurred or to have begun to occur by any insured listed under Paragraph **3.** of **SECTION II – WHO IS AN INSURED** or any **employee** authorized by you to give or receive notice of an **occurrence** or claim, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the **policy period**.

…

**SECTION V – EXCLUSIONS**

This insurance does not apply to:

…

**19. Pollution**[4]

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**, anywhere at any time, whether included in a product or otherwise.

…

This exclusion applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such **pollutant** has any function in your business, operations, premises, site or location.

…

**SECTION VII – DEFINITIONS**

…

**3. Bodily injury** means physical injury, sickness or disease, including death of a person. **Bodily injury** also means mental injury, mental anguish, humiliation, or shock if resulting from physical injury, sickness or disease to that person.

…

**16. Occurrence** means, with respect to:

[4] This provision is contained in the base coverage form before amendment by endorsement. Each of the four LIC Umbrella Policies replaces exclusion 19 by endorsement by LCU 26 20 05 18 (2021–22), LCU 26 18 01 18 (2022–23), and by both LCU 26 12 01 18 and LCU 26 18 01 18 (2023–24, 2024–25). *See* infra ¶ 26.

a. Bodily injury or property damage, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one occurrence;

…

**20. Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

…

**22. Property damage** means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

For the purposes of this insurance, **electronic data** is not tangible property.

**23. Retained limit** means as to each **occurrence** the greater of:

a. The total applicable limits of the **underlying insurance** plus any **other insurance** available to the insured; or

b. The Self-Insured Retention shown in the Declarations as a result of any one **occurrence** not covered by **underlying insurance** nor any other insurance. The Self-Insured Retention does not apply to **occurrences** that would have been covered by **underlying insurance** but for the exhaustion of applicable limits.

…

**25. Suit** means a civil proceeding in which damages because of any liability to which this insurance applies are alleged.

Suit includes:

a. An arbitration proceeding in which such damages are claimed and can be awarded and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and can be awarded and to which the insured submits with our consent.

**24.** The LIC Umbrella Policies include a Silica or Silica-Related Dust Exclusion, via Endorsement LCU 21 19 01 18, which provides, in relevant part, as follows:

**SILICA OR SILICA-RELATED DUST EXCLUSION**

The following exclusion is added to **SECTION V – EXCLUSIONS:**

Silica or Silica-Related Dust

a. **Bodily injury** arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, **silica** or **silica-related dust**.

…

For the purpose of this endorsement:

a. **Silica** means silicon dioxide (occurring in crystalline, amorphous and impure forms), **silica** particles, **silica** dust or **silica** compounds.
b. **Silica-related dust** means a mixture or combination of **silica** and other dust or particles.

**25.** The LIC Umbrella Policies include a Non-Cumulation of Liability (Same Occurrence) provision, via Endorsement LCU 25 09 01 18, that provides, in relevant part, as follows:

**NON-CUMULATION OF LIABILITY
(SAME OCCURRENCE)**

A. The following is added to Paragraph **4.** of **SECTION III – LIMITS OF INSURANCE:**

If one **occurrence** causes **bodily injury** and/or **property damage** during the **policy period** and during the **policy period** of one or more prior and/or future umbrella or excess liability policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such **occurrence.** This paragraph will not apply to insurance specifically written as excess over this policy.

If one **occurrence** causes **personal and advertising Injury** to which this policy applies and to which one or more prior and/or future umbrella or excess liability policy(ies) issued to you by us also applies, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such **occurrence.** This paragraph will not apply to insurance specifically written as excess over this policy.

B. Paragraph **7.** of **SECTION III – LIMITS OF INSURANCE** is deleted and replaced by the following:

The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the **policy period** shown in the Declarations, unless the **policy period** is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the aggregate Limits of Insurance. However, the Each Occurrence Limit is the most we will pay for damages because of all **bodily Injury, property damage** and **personal and advertising injury** arising out of any one **occurrence** regardless of the length of the **policy period.**

**26.** The LIC Umbrella Policies effective during the period October 31, 2023 to October 31, 2025, include a Total Pollution Exclusion With A Hostile Fire Exception, via Endorsement LCU 26 12 01 18, that provides, in relevant part, as follows:

**TOTAL POLLUTION EXCLUSION WITH A HOSTILE FIRE EXCEPTION**

Exclusion **19.** of **SECTION V – EXCLUSIONS** is deleted and replaced by the following:

19. Pollution

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants,** anywhere at any time, whether included in a product or otherwise.

   However, this exclusion does not apply to the extent **underlying insurance** provides coverage for **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire.**

   Coverage under this policy will be no broader than that provided by **underlying insurance.**

b. Any loss, cost or expense arising out of any:

   (1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants;** or

   (2) Claim or suit by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants.**

This exclusion applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such **pollutant** has any function in your business, operations, premises, site or location.

**27.** The LIC Umbrella Policies effective during the period October 31, 2022 to October 31, 2025, include a Pollution Limitation, via Endorsement LCU 26 18 01 18, which provides, in relevant part, as follows:

**POLLUTION LIMITATION**

Paragraph 19. of SECTION V – EXCLUSIONS is deleted and replaced by the following:
19. Pollution

a. Any liability arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants,** anywhere at any time, whether included in a product or otherwise.
However, this exclusion does not apply to the extent **underlying insurance** provides coverage for **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants.** Coverage under this policy will be no broader than that provided by **underlying insurance.**

b. Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants;** or

(2) Claim or suit by or on behalf of a government authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants.**

This exclusion applies regardless of whether such discharge, dispersal, seepage, migration, release or escape occurs inside or outside a building or whether such **pollutant** has any function in your business, operations, premises, site or location.

**28.** The LIC Umbrella Policies include a Damage First Occurring Prior to Policy Period Exclusion, via Endorsement LCU 21 47 01 18, which provides in relevant part:

**DAMAGE FIRST OCCURRING**
**PRIOR TO POLICY PERIOD EXCLUSION**

The following exclusion is added to **SECTION V – EXCLUSIONS**:

**Damage First Occurring Prior to Policy Period**

This insurance does not apply to **bodily injury** or **property damage** within the **products-completed operations hazard** if the injury or damage first occurred prior to the effective date of this policy.

**29.** The Liberty Policies contain provisions in addition to those quoted above which may be relevant to the relief sought by Liberty in this Complaint. Liberty reserves the right to rely on such contractual provisions as appropriate, including but not limited to the following:

**30.** The Liberty Policies only cover "bodily injury" if it is caused by an "occurrence," defined, in relevant part, as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

**31.** Each of the Liberty Policies only covers "bodily injury" that takes place during the policy period of such policy.

**32.** Each of the Liberty Policies excludes "bodily injury" expected or intended from the standpoint of the insured.

**33.** The Liberty Policies do not cover "bodily injury" that any insured knew had occurred, in whole or in part, prior to the inception of the applicable policy period.

**34.** To the extent precluded by the terms of the Liberty Policies or by applicable law, including public policy, the Liberty Policies afford no coverage for punitive, exemplary or similar damages that may be assessed against any insured.

**35.** Liberty's obligations under the Liberty Policies, if any, are limited by the Limits of Insurance stated in the Declarations, including the applicable Each Occurrence and aggregate

limits; by the deductible applicable to the LM Fire Primary Policies; by the "retained limit" applicable to the LIC Umbrella Policies; and by the "Other Insurance" conditions.

**36.** Each of the Liberty Policies contains a "Non-Cumulation of Liability" Endorsement, limiting coverage of "bodily injury" caused by a single "occurrence" during the policy period and during the period of one or more other Liberty policies.

## II. The Silica Lawsuits

**37.** Wilsonart has been named as one of a number of defendants in multiple Silica Lawsuits brought by plaintiffs alleging exposure to silica and other contaminants contained in defendants' stone products. Attached as Exhibit I is a complaint filed against Wilsonart and others by a plaintiff in one of the Silica Lawsuits. *See Evelin Liseth Gonzalez Rodriguez et al. v. Wilsonart, LLC et al.*, Case No. 23STCV29755 (Los Angeles Sup. Ct.) (the "Rodriguez Action").

**38.** The Rodriguez Action alleges injuries, including principally silicosis, caused by plaintiff's exposure to the defendants' silica-containing stone products. The complaint in the Rodriguez Action (the "Rodriguez Complaint") contains numerous specific allegations relating to the dangers of silica, the defendants' knowledge of the dangers of silica, and the defendants' use of silica-containing products despite such knowledge. In short, the Rodriguez Action is a "suit" that alleges bodily injury that was caused by exposure to silica, either alone or in combination with other substances. The Rodriguez Action also alleges bodily injuries "arising, in whole or in part, out of" the alleged exposure to silica. The allegations in the Rodriguez Complaint are similar, if not identical, to allegations in other Silica Lawsuits naming Wilsonart.

**39.** The allegations of the Rodriguez Complaint fall squarely within the Silica Exclusions. The Rodriguez Complaint alleges that the plaintiff was injured while fabricating the defendants' "inherently hazardous stone products" that released "respirable crystalline silica." Id.,

¶¶ 75-76. The Rodriguez Complaint states that "[a]ll stone products contain crystalline silica in varying concentrations…about 93-95% in traditional artificial stone." ¶ 57. The Rodriguez Complaint also alleges that the plaintiff suffered injuries "[a]s a direct and proximate result of [Plaintiff's] exposure to silica, metals, and other toxins within said stone products manufactured…by Defendants." ¶ 75. Importantly, the Rodriguez Complaint alleges that all of the plaintiff's injuries were caused at least in part by silica, and that the "stone products containing silica… were substantial factors in causing, prolonging, and aggravating his silicosis and his related and consequential injuries."

**40.** Allegations relating to silica and silicosis permeate the entirety of the Rodriguez Complaint. Id., ¶¶ 75-76, 86-167, 168, 169-1045. The complaint includes a section entitled "Stone Slab Products And Their Toxic Constituents," which describes the contaminants contained in the defendants' products, with a heavy focus on crystalline silica. Id., ¶¶ 53-63. It details plaintiff's injuries caused by exposure to silica stone products resulting in "silica-related diseases," including "silicosis, pulmonary fibrosis, [and] progressive massive fibrosis." Id., ¶¶ 59, 75. It includes dozens of paragraphs describing the dangers of silica, the stone industry's knowledge of those dangers, and the stone industry's use of silica-containing stone products despite that knowledge. Id., ¶¶ 86-167.

**41.** The remainder of the Rodriguez Complaint describes in detail each defendant's use of "artificial stone products containing approximately 95% crystalline silica that caused or contributed to Plaintiff's silicosis, pulmonary fibrosis, progressive massive fibrosis, and other injuries." Id., ¶¶ 168, 169-1045. As with the other defendants, the section addressed to Wilsonart focuses on its use and knowledge of the dangers of crystalline silica. Id., ¶¶ 1031-1045.

**III. Wilsonart's Request For Coverage From Liberty**

**42.** Wilsonart sought defense and/or indemnity from Liberty for the Rodriguez Action.

**43.** Upon review of the allegations in the Rodriguez Complaint, Liberty determined that the Silica Exclusions contained in the Liberty Policies bar coverage for the Rodriguez Action against Wilsonart. Accordingly, by letter dated October 29, 2025, Liberty denied coverage for the Rodriguez Action.

**44.** Even assuming, arguendo, that the Silica Exclusions alone do not completely bar coverage for the Rodriguez Action (it does), other provisions contained in one or more of the Liberty Policies combine with the Silica Exclusions to bar coverage, including but not limited to (i) the total pollution exclusions and (ii) the damage first occurring prior to the policy period exclusion, both of which are quoted above.

**COUNT I**

**(Declaratory Judgment – No Duty to Defend Wilsonart in the Rodriguez Action)**

**45.** Liberty reasserts and incorporates by reference each of the allegations alleged in the preceding paragraphs of this Complaint as though fully alleged herein.

**46.** As described above, Liberty has denied that it owes Wilsonart a duty to defend in connection with the Rodriguez Action under the Liberty Policies.

**47.** There exists an actual, ripe, and justiciable controversy between the parties concerning the question of whether Liberty owes a duty to defend Wilsonart in the Rodriguez Action.

**48.** Liberty seeks and is entitled to a declaration that, under the terms, conditions, and exclusions of the Liberty Policies, Liberty has no duty to defend Wilsonart or to pay for Wilsonart's defense costs with respect to the Rodriguez Action.

**COUNT II**

**(Declaratory Judgment – No Duty to Indemnify Wilsonart for the Rodriguez Action)**

**49.** Liberty reasserts and incorporates by reference each of the allegations alleged in the preceding paragraphs of this Complaint as though fully alleged herein.

**50.** As described above, Wilsonart has sought indemnity from Liberty under the Liberty Policies for the Rodriguez Action.

**51.** Liberty disputes that it could owe any indemnification obligation to Wilsonart under any of the Liberty Policies for the Rodriguez Action.

**52.** There exists an actual, ripe, and justiciable controversy between the parties concerning the question whether Liberty owes, or could owe, any duty to indemnify Wilsonart in connection with the Rodriguez Action.

**53.** Because the duty to defend is broader than the duty to indemnify, Liberty seeks and is entitled to a declaration that Liberty has no duty to indemnify Wilsonart for the Rodriguez Action.

**PRAYER FOR RELIEF**

WHEREFORE, Liberty respectfully prays for judgment as follows:

a. A declaration that Liberty is not obligated to defend Wilsonart or pay for Wilsonart's defense with respect to the Rodriguez Action under any of the Liberty Policies;

b. A declaration that Liberty is not obligated to indemnify Wilsonart with respect to the Rodriguez Action under any of the Liberty Policies; and

c. Such other and further relief as this Court deems just and proper.

Dated: October 5, 2026

Respectfully submitted,

FREEMAN, MATHIS & GARY LLP

/s/ *Harrison Yoss*

Harrison Yoss
TX State Bar No. 22169030
Harrison.Yoss@fmglaw.com
Claire Ries
TX State Bar No. 24075214
Claire.Ries@fmglaw.com
2911 Turtle Creek Blvd, Suite 500
Dallas, Texas 75219
Telephone: 214-430-4528

– and –

CHOATE, HALL & STEWART LLP

Robert Kole
rkole@choate.com
Caroline Trusty
ctrusty@choate.com
Two International Place
Boston, Massachusetts 02110
Telephone: 617-248-5000
Facsimile: 617-248-4000

*Attorneys for Plaintiffs Liberty Mutual Fire Insurance Company and Liberty Insurance Corporation*